UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

UNITED STATES OF AMERICA,

- against -

FARSHID JAHEDI,

Defendant.

------------------------------------------------- X

**OPINION AND ORDER**

**09 Cr. 460 (SAS)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/2/09
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

Farshid Jahedi is under indictment on two counts of obstruction of justice pursuant to sections 1512(c)(1) (Count I) and 1503 (Count II) of Title 18 of the United States Code.  The indictment alleges that Jahedi discarded documents responsive to a federal grand jury subpoena.  Jahedi moves to dismiss one of the counts as multiplicitous.  Jahedi also seeks dismissal of the section 1503 charge on the ground that the enactment of section 1512(c)(1) removed document destruction from the ambit of section 1503.  Jahedi additionally seeks to exclude from trial the allegations arising in a separate civil proceeding.  For the reasons set forth below, the motion is denied in its entirety.

1

## II. BACKGROUND

In July 2007, Jahedi began serving as president of the Alavi

Foundation ("Alavi"), a non-profit foundation based in New York that promotes

Islamic culture and the Persian language.[1]  Alavi owns a sixty percent interest in a

Manhattan office skyscraper located at 650 Fifth Avenue.[2]  The Assa Corporation

owns the remaining forty percent.[3]

According to the criminal complaint, on December 17, 2008, the

United States served a civil forfeiture complaint on representatives of the Assa

Corporation and related entities (collectively "Assa") by which the United States

sought to forfeit Assa's interest in 650 Fifth Avenue.[4]  The forfeiture complaint

alleged that Assa was a front for the state-owned Bank Melli of Iran and that its

dealings in New York commercial real estate violated the International Emergency

---

[1]     *See* Defendant's Memorandum of Law in Support of Pretrial Motions
("Def. Mem.") at 4; The Alavi Foundation, Welcome, http://www.alavifoundation.
org, Ex. 5 to 8/3/09 Declaration of Barry H. Berke, defendant's counsel ("Berke
Decl."); The Alavi Foundation, About Us – Mission, http://www.alavifoundation.
org/page01.shtml.org, Ex. 11 to Berke Decl.

[2]     *See* Def. Mem. at 5.

[3]     *See id.*

[4]     *See* Complaint, *United States v. Jahedi*, 08 Mag. 2793 (Dec. 19,
2008), Ex. 2 to Berke Decl. ("Jahedi Compl."), ¶¶ 3, 4.

Economic Powers Act ("IEEPA") and the Iranian Transaction Regulations.[5]  Alavi

was not named as a defendant in the forfeiture proceeding; however, the complaint

alleged that Assa was formed to carry out a transaction in 1989 that enabled Alavi

— in partnership with Bank Melli — to avoid paying substantial taxes on rental

income from 650 Fifth Avenue.[6]

The same day that the forfeiture complaint was served, Jahedi — as

president of Alavi — was served with a grand jury subpoena.[7]  The subpoena

contained statutory references indicating that the grand jury was investigating

alleged violations of IEEPA and money laundering statutes.[8]  The subpoena called

for production of a variety of documents relating or referring to 650 Fifth Avenue,

Assa, and Bank Melli, from January 1, 1989 to the date the subpoena was served.[9]

The subpoena specified, but was not restricted to, contracts and/or agreements

relating to financial transactions of any type and kind; financial statements; deposit

---

[5]     *See* Verified Complaint, *United States v. All Right, Title, and Interest of Assa Corporation, Assa Company Limited, and Bank Melli of Iran in 650 Fifth Avenue Company*, 08 Civ. 10934 (Dec. 17. 2008), Ex. 1 to Berke Decl.

[6]     *See id*. ¶¶ 20-22.

[7]     *See* Def. Mem. at 5; Jahedi Compl. ¶ 4.

[8]     *See* Grand Jury Subpoena Addressed to Alavi Foundation (Dec. 17, 2008), Ex. 6 to Berke Decl. (citing 50 U.S.C. § 1701 (IEEPA) and 18 U.S.C. §§ 1956, 1957 (money laundering)).

[9]     *See id.*

slips; cancelled checks; payment receipts; records of transfer of funds; and correspondence.[10]

The criminal complaint alleges that the very next day, December 18, 2008, FBI personnel conducting surveillance observed Jahedi commute home from his Manhattan office in a circuitous manner and then discard torn papers into a public trash can.[11]  Before discarding the papers, Jahedi allegedly appeared to ascertain whether he had been followed.[12]  The FBI agents collected the papers from the trash, and determined that they appeared to be responsive to the grand jury subpoena.[13]

Based on these allegations, Jahedi was indicted on two counts of obstruction of justice under sections 1512(c)(1) (Count I) and 1503 (Count II) of Title 18 of the United States Code.  Count I charges that Jahedi:

> unlawfully, willfully, and knowingly did corruptly alter, destroy, mutilate, and conceal, a record, document, and other object, and did attempt so to do, with the intent to impair the object's integrity and availability for use in an official proceeding, to wit, Jahedi discarded torn up documents that were requested by a Federal grand jury

---

[10]     See id.

[11]     See Jahedi Compl. ¶ 7.

[12]     See id.

[13]     See id. ¶ 8.

4

subpoena that was served on Jahedi personally on December 17, 2008.[14]

Count II charges that Jahedi:

> unlawfully, willfully, and knowingly did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due administration of justice, to wit, Jahedi withheld, concealed, and discarded documents that were requested by a Federal grand jury subpoena, that was served on Jahedi personally on or about December 17, 2008.[15]

## III.   DISCUSSION

### A.   Motion to Dismiss for Multiplicity

Jahedi seeks dismissal of one of the counts in the indictment on the ground that the two counts are multiplicitous. While I conclude that the charges are not multiplicitous as to their statutory elements, I reserve judgment as to whether the facts at hand require a finding of multiplicity.

#### 1.   Applicable Law

A multiplicitous indictment violates the Double Jeopardy Clause of the Fifth Amendment, which provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."[16] "An indictment is

---

[14]   Indictment, *United States v. Jahedi*, 09 Cr. 460 (May 5, 2009), at 1.

[15]   *Id.* at 1-2.

[16]   U.S. Const. amend. V.

5

multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."[17] "To assess whether the two offenses charged separately in the indictment are really one offense charged twice, the 'same elements' test or the '*Blockburger*' test is applied."[18] The charges are not multiplicitous "[i]f there is an element in each offense that is not contained in the other."[19] "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' — in the legal sense, as defined by Congress — complained of in one count is the same as that charged in another."[20] The ultimate touchstone of multiplicity is legislative intent; thus, even where the *Blockburger* test is not met, separate punishments under separate statutes for the same offensive conduct is permissible if Congress intended to permit such punishment.[21]

## 2.   Elements of the Charged Offenses

The "omnibus" or "residual" clause of section 1503 criminalizes "corruptly or by threats or force, or by any threatening letter or communication,

---

[17]   *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

[18]   *Id.* at 146 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

[19]   *Id.*

[20]   *Id.*

[21]   *See Albernaz v. United States*, 450 U.S. 333, 339-42 (1981).

influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice."[22] "The phrase 'administration of justice' in this statute has been authoritatively construed to require a pending federal judicial proceeding, such as a federal grand jury proceeding."[23] Thus, section 1503 requires proof beyond a reasonable doubt (1) that there is a pending judicial proceeding, (2) that the defendant knew or had notice of the proceeding, and (3) that the defendant "acted with the wrongful intent or improper purpose to influence the . . . proceeding, whether or not the defendant is successful in doing so — that is, 'that the defendant corruptly intended to impede the administration of that judicial proceeding.'"[24] There must be a nexus in time, causation, or logic between the conduct and its effect on the proceeding: A defendant must know that his corrupt actions "are likely to affect the . . . proceeding."[25] "The nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the mens rea requirement of 'corruptly' obstructing or endeavoring to obstruct. As used in the statute, the word corruptly is 'normally associated with

---

[22]     18 U.S.C. § 1503.

[23]     *United States v. Schwarz*, 283 F.3d 76, 105 (2d Cir. 2002).

[24]     *United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) (quoting *United States v. Fassnacht*, 332 F.3d 440, 447 (7th Cir. 2003)).

[25]     *United States v. Aguilar*, 515 U.S. 593, 599 (1995).

wrongful, immoral, depraved, or evil.'"[26]

Section 1512(c)(1) criminalizes "corruptly alter[ing], destroy[ing],
mutilat[ing], or conceal[ing] a record, document, or other object, or attempt[ing] to
do so, with the intent to impair the object's integrity or availability for use in an
official proceeding."[27] Thus, section 1512(c)(1) requires proof beyond a
reasonable doubt (1) that a defendant altered, destroyed, or concealed a document,
or attempted to do so, (2) with intent to impair the document's availability for use
in an official proceeding.[28] The Second Circuit has assumed without deciding that
a conviction under section 1512(c)(1) requires proof of a nexus between a
defendant's corrupt act and its effect on the official proceeding.[29] For purposes of
section 1512, an "official proceeding" includes "a proceeding before a judge or

---

[26] *Quattrone*, 441 F.3d at 170 (quoting *Arthur Anderson LLP v. United States*, 544 U.S. 696, 705 (2005)).

[27] 18 U.S.C. § 1512(c)(1).

[28] *See United States v. Ortiz*, 367 F. Supp. 2d 536, 543 (S.D.N.Y. 2005), *aff'd*, 220 Fed. Appx. 13 (2d Cir. 2007) (unpublished).

[29] *See Ortiz*, 220 Fed. Appx. at 16-17. In *Aguilar*, the Supreme Court held that proof of a nexus between the obstructive act and the proceedings is required to sustain a conviction under section 1503. *See supra* note 25 and accompanying text. In *Arthur Anderson LLP*, the Supreme Court held that section 1512(b)(2) of Title 18 of the United States Code similarly imposed a mens rea requirement. *See* 544 U.S. at 705-07. In *United States v. Reich*, the Second Circuit held that the nexus requirement established in *Aguilar* applies to section 1512(c)(2) of Title 18 of the United States Code. *See* 479 F.3d 179 (2d Cir. 2007).

8

court of the United States . . . or a Federal grand jury."[30]

### 3.    Analysis

Sections 1503 and 1512(c)(1) each contain elements not present in the

other.[31]  Section 1503 — but not section 1512(c)(1) — requires proof that a

defendant corruptly intended to influence or obstruct pending judicial proceedings.

Section 1512(c)(1) — but not section 1503 — requires proof of the destruction or

concealment of a document, with intent to impair its availability in an official

proceeding.   Further, whereas the judicial proceeding must be pending under

section 1503,[32] the "official proceeding" under section 1512(c)(1) need not be

pending.[33]

Jahedi argues that his indictment is nonetheless multiplicitous under

the Second Circuit's decision in *United States v. Ben Zvi*.[34]  In *Ben Zvi*, the court

explained that "[a]lthough [two] statutes may literally require different elements to

---

[30]     18 U.S.C. § 1515(a)(1)(A).

[31]     *See United States v. Butler*, 351 F. Supp. 2d 121, 132 (S.D.N.Y.
2004).

[32]     *See Aguilar*, 515 U.S. at 599 (discussing the pendency requirement of
section 1503).

[33]     *See* 18 U.S.C. § 1512(f)(1) ("[For the purposes of this section] an
official proceeding need not be pending or about to be instituted at the time of the
offense.").

[34]     *See* Def. Mem. at 10-13.

9

be proved, we have previously held that statutory distinctions may not always

satisfy *Blockburger*, and that sometimes the facts at hand may require a finding of

multiplicity."[35]  *Ben Zvi* specifically held that charging both domestic and

international money laundering for the same transactions was multiplicitous:

> In the context of this case, the "financial transactions" that
> the government had to establish in order to prove domestic
> laundering were the very same international "transmittal"
> of funds that were necessary elements of the international
> laundering counts.   The only fact not common to both
> counts was the additional requirement of [the international
> laundering statute] that the funds transfers be
> international.[36]

"*Blockburger* is not satisfied where the elements of one charged offense are

subsumed within another charged offense."[37]

Relying on *Ben Zvi*, Jahedi contends that his indictment is

multiplicitous because both counts allege the same obstruction of the same grand

jury proceedings.[38]  The indictment alleges that Jahedi violated section 1503 when

he "withheld, concealed, and discarded documents that were requested by a Federal

grand jury subpoena, that was served on Jahedi personally on or about December

---

[35]      168 F.3d 49, 57 (2d Cir. 1999) (citing *United States v. Holmes*, 44
F.3d 1150, 1154-56 (2d Cir. 1995)).

[36]      *Id.*

[37]      *Id.*

[38]      *See* Def. Mem. at 11-12.

10

17, 2008[,]" and section 1512(c)(1) when he "discarded torn up documents that were requested by a Federal grand jury subpoena that was served on Jahedi personally on December 17, 2008."[39]  Of course, the same set of conduct frequently violates more than one statute.  However, Jahedi's argument is more nuanced.  He argues that because the pending grand jury proceeding underlying the section 1503 charge is the official proceeding for the section 1512(c)(1) charge, proving one count will necessarily prove the other and, therefore, the counts are multiplicitous under *Ben Zvi*.

In response, the government posits two scenarios under which Jahedi might be convicted of one offense but not the other.[40]  *First*, the jury could conclude Jahedi destroyed documents so that they could not be used at an official proceeding, but could decide he lacked an appreciation that a judicial proceeding was actually pending.  In this scenario, Jahedi would be convicted under 1512(c)(1) but acquitted under section 1503.  *Second*, the government asserts that the jury could conclude Jahedi did intend to obstruct a pending judicial proceeding, but could decide that he did not in fact attempt to conceal or destroy a document that would be used in an official proceeding.  In this second scenario, Jahedi would be convicted under section 1503 but acquitted under section 1512(c)(1).

---

[39]     Indictment at 1-2.

[40]     *See* Gov. Mem. at 6.

The government additionally argues that Jahedi's multiplicity challenge is premature.[41]  The Second Circuit recently made clear in *United States v. Josephberg* that "[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed."[42]  In *Josephberg*, the court considered a pre-trial dismissal of an obstruction count that the district court concluded was multiplicitous in light of the factual allegations.[43]  Vacating the dismissal as premature, the Second Circuit explained that the defendant's Double Jeopardy rights would only be violated if he were punished twice for the same offense, not if he were prosecuted twice for the same offense or even convicted twice.[44]  Thus, a defendant's Double Jeopardy rights are only at risk upon conviction on more than one multiplicitous count.[45]  If this

---

[41]    *See id.* at 8-9.

[42]    459 F.3d 350, 355 (2d Cir. 2006) (*per curiam*).

[43]    *See id.* at 352.

[44]    *See id.* at 355 ("Even where the Double Jeopardy Clause would bar cumulative punishment for more than one such offense, 'the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution.'" (quoting *Ohio v. Johnson*, 467 U.S. 493, 500 (1984))); *see also Ball v. United States*, 470 U.S. 856, 860 (1985) ("If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense.").

[45]    *See Josephberg*, 459 F.3d at 355.

occurs, the proper remedy is for the district court to enter judgment on only one of the multiplicitous convictions.[46] "Given these principles, [the Circuit] conclude[d] that the district court's dismissal of [the obstruction count] prior to trial was at best premature."[47]

In light of *Josephberg*, I decline to decide at this juncture whether the indictment is multiplicitous under *Ben Zvi*.[48] However, I view with some skepticism the government's assertion that the jury could conclude Jahedi intended to obstruct a pending judicial proceeding, but decide that he did not in fact attempt to conceal or destroy a document that would be used in an official proceeding. After all, the alleged obstruction for both counts is trashing documents, and the same grand jury proceedings underlie both counts. If the evidence at trial establishes that the section 1512(c)(1) charge is subsumed within the section 1503 charge, such that the government's proof as to the latter charge necessarily proves the former charge, the indictment may in fact be multiplicitous. At this stage, however, the government has sufficiently distinguished the charges as to their

---

[46]     *See id.*

[47]     *Id.*

[48]     *Ben Zvi* is consistent with this Court's approach: The court in *Ben Zvi* considered convictions at trial. *See* 168 F.3d at 53.

13

statutory elements.[49]

### B.    Motion to Dismiss Section 1503 Charge

Jahedi seeks dismissal of the section 1503 charge on the ground that
the enactment of section 1512(c)(1) removed document destruction from the ambit
of section 1503.[50] This is an issue of first impression.  As discussed below, the
legislative history to which Jahedi points demonstrates that Congress intended
section 1512(c)(1) — which was enacted as part of the Sarbanes-Oxley Act of
2002 — to broaden punishment for document destruction, but it does not establish
that Congress intended that section 1512(c)(1) would supplant section 1503.
Therefore, Jahedi's motion to dismiss the section 1503 charge on this ground is
denied.

Jahedi first cites to the following statement by Senator Orrin Hatch:

---

[49]    Jahedi briefly argues that permitting both counts to go forward will
prejudice him by making it appear to the jury that he has committed more than one
crime.  *See* Def. Mem. at 9; Defendant's Reply Memorandum of Law in Support of
Pretrial Motions ("Def. Reply") at 4.  He cites to *United States v. Reed*, in which
the Second Circuit stated that "[t]he vice of multiplicity of charges is that it may
lead to multiple sentences for the same offense *and may improperly prejudice a
jury by suggesting that a defendant has committed not one but several crimes*."
639 F.2d 896, 904 (2d Cir. 1981) (emphasis added).  *Josephberg*, which was
decided fifteen years after *Reed*, made no mention of this concern when concluding
that a pre-trial dismissal of a potentially multiplicitous count was premature.  *See*
459 F.3d at 354-56.  In any event, because I conclude that the indictment is not
multiplicitous with respect to the statutory elements of the charged offenses,
Jahedi's claim of prejudice, like his claim under *Ben Zvi*, is premature.

[50]    *See* Def. Mem. at 13-14.

14

[T]he amendment strengthens an existing federal
offense that is often used to prosecute document shredding
and other forms of obstruction of justice. Section 1520 of
Title 18 of the United States [C]ode currently prohibits
individuals from persuading others to engage in obstructive
conduct.    However, it does not prohibit an act of
destruction committed by a defendant acting alone. While
other existing obstruction of justice statutes cover acts of
destruction that are committed by and individual acting
alone, such statutes have been interpreted as applying only
where a proceeding is pending, and a subpoena has been
issued for the evidence that is destroyed.

This amendment closes this loophole by broadening
the scope of the [sic] Section 1512. Like the new document
destruction provision contained in S. 2010, this amendment
would permit the government to prosecute an individual
who acts alone in destroying evidence, even where the
evidence is destroyed prior to the issuance of a grand jury
subpoena.[51]

Jahedi also cites to a report by the Senate Judiciary Committee that

states in pertinent part:

Current federal obstruction of justice statutes relating
to document destruction is [sic] riddled with loopholes and
burdensome proof requirements. Those provisions are a
patchwork of various prohibitions that have been
interpreted very narrowly by federal courts. . . .
[P]rovisions, such [sic] section 1503, have been narrowly
interpreted by courts, including the Supreme Court in
*United States v. Aguillar* [sic], and the First Circuit in
*United States v. Frankhauser*, to apply only to situations
when the obstruction of justice may be closely tied to a
judicial proceeding. . . . In short, the current laws regarding

[51]    148 Cong. Rec. S6524-02, S6550 (daily ed. July 10, 2002), Ex. 15 to
Berke Decl.

15

destruction of evidence are full of ambiguities and
limitations that must be corrected.

    . . . When a person destroys evidence with the intent
of obstructing any type of investigation and the matter is
within the jurisdiction of a federal agency, overly technical
legal distinctions should neither hinder nor prevent
prosecution and punishment.[52]

Relying on these quotations, Jahedi argues that the legislative history
"demonstrates that Congress enacted [section] 1512(c)(1) to dispense with the
'patchwork' statutory framework governing document destruction obstruction, and
more specifically to foreclose the 'loophole' left open by the judicial interpretation
of [section] 1503, as applied to document destruction cases, requiring a 'pending'
proceeding."[53]  As a result, Jahedi contends that Congress meant for all document
destruction charges to be brought under 1512(c)(1), and no longer under section
1503.

Jahedi's read of the legislative history is partially correct.  Senator
Hatch's statement, though directed specifically at section 1520, does evidence
Congress's desire to proscribe document destruction in relation to governmental
proceedings wider than the pending judicial proceedings to which section 1503
applies.  The Judiciary Committee's report, particularly the statement that "current

---

[52]    S. Rep. No. 107-146, at 6-7 (2002) (citations omitted), Ex. 16 to
Berke Decl.

[53]    Def. Mem. at 14.

16

laws regarding destruction of evidence are full of ambiguities and limitations that must be corrected[,]" lends some weight to Jahedi's position. Still, Congress's disapproval of perceived judicial narrowing of section 1503 simply does not establish Congressional intent to affirmatively remove document destruction from section 1503. The legislative history to which Jahedi points can also be read to establish that, with section 1512(c)(1), Congress simply enacted a new statute with a more expansive reach. Neither that Congress directed section 1512(c)(1) to a broader swath of conduct than may be prosecuted under section 1503, nor that Congress was critical of judicial interpretation of section 1503, demonstrates that Congress meant for the crime of obstruction of justice by document destruction to be located solely within section 1512(c)(1).

Jahedi seeks support from the Second Circuit's decision in *United States v. Hernandez*, which held that "by enacting the Victim and Witness Protection Act in 1982, Congress intended that intimidation and harassment of witnesses should thenceforth be prosecuted under § 1512 and no longer fall under § 1503."[54] The court reached this conclusion after "viewing the actions of

---

[54]     730 F.2d 895, 899 (2d Cir. 1984). *Hernandez* is controlling in this circuit; however, a number of other Courts of Appeals have rejected the holding of *Hernandez*. *See United States v. Moody*, 977 F.2d 1420, 1424 (11th Cir. 1992); *United States v. Branch*, 850 F.2d 1080, 1082 (5th Cir. 1988); *United States v. Risken*, 788 F.2d 1361, 1367-68 (8th Cir. 1986); *United States v. Rovetuso*, 768 F.2d 809, 823-24 (7th Cir. 1985); *United States v. Lester*, 749 F.2d 1288, 1291-96

17

Congress and the plain language of both statutes realistically."[55]  "By the new

statute [C]ongress [deleted] from § 1503 all references to witnesses, leaving that

section to protect jurors and court officers, and enacted a new section, § 1512,

addressed specifically and in more detail to the protection of witnesses, informants,

and crime victims from intimidation."[56]  The court viewed the explicit removal of

language from section 1503 to be particularly persuasive, and the court even spent

the time and space to "graphically demonstrate" each deletion.[57]  The court in

*Hernandez* further emphasized legislative history in which a prime mover of the

bill explained that the final version "provided that § 1512 would replace that part

of § 1503 that pertained to witnesses" and that section 1503 would no longer

provide protection to witnesses.[58]

        Jahedi urges the Court to reach a conclusion similar to that of

*Hernandez*.   The legislative history to which Jahedi points, however, is not

comparable to that considered in *Hernandez*.   Congress did not make any express

change to section 1503 when it enacted section 1512(c)(1).  Of course, as Jahedi

---

(9th Cir. 1984).

[55]     730 F.2d at 898.

[56]     *Id.*

[57]     *Id.* at 898-99.

[58]     *Id.* (quoting 129 Cong. Rec. S. 13063 (daily ed. Oct. 1, 1982)).

highlights, "[section 1503] has *never* contained [express] references to document destruction or concealment."[59]  Given that courts have consistently construed section 1503 to apply to document destruction, no language in the statute was suitable for deletion.  Nevertheless, as previously explained, Senator Hatch's statement and the Senate Judiciary Committee's report with respect to section 1512(c)(1) only evidence Congress's intent to prohibit a broader array of conduct.  Unlike in *Hernandez*, Jahedi has identified no legislative history that indicates with any rigor — let alone expressly states — that Congress affirmatively intended section 1512(c)(1) to be the exclusive vehicle for prosecution of obstruction of justice based on document destruction.  Absent any such evidence of Congressional intent, Jahedi's attempt to narrow section 1503 is rejected.

### C.    Motion in Limine

Jahedi brings a motion in limine to exclude from trial the allegations in the pending civil forfeiture action against Assa and Bank Melli.  Jahedi argues that inclusion of these allegations at trial would (1) be contrary to the government's discovery position, (2) prejudicially expand the scope of this case, and (3) inject into the trial inflammatory allegations involving Iran.  Neither party refers the Court to any specific category or piece of evidence that the government intends to

---

[59]     Def. Reply at 5.

introduce; rather, Jahedi's position is largely speculative at this stage.

Consequently — and because I discern no immediate basis to exclude the forfeiture allegations, which are relevant to this case — the motion in limine is denied.

### 1.    Discovery

Jahedi contends that the government has failed to produce any evidence concerning the forfeiture allegations pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and therefore should be barred from raising those allegations at trial.[60]  Under Rule 16, the government is obligated, upon a defendant's request, to produce items material to preparing the defense or that the government intends to use in its case-in-chief at trial.[61]  "Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense . . . ."[62]

The relevant portion of Jahedi's discovery request tracks Rule 16, seeking documents that the government intends to use as evidence in its case-in-chief and all other material evidence.[63]  Of particular moment, Jahedi requested

---

[60]    *See id.* at 15-17.

[61]    *See* Fed. R. Crim. P. 16(a)(1)(E)(i) and (ii).

[62]    *United States v. Stevens*, 985 F.2d 428, 431 (2d Cir. 1993).

[63]    *See* Letter from Barry Berke, defendant's counsel, to Harry A. Chernoff, Assistant United States Attorney (May 29, 2009), Ex. 12 to Berke Decl., ¶¶ 8, 9.

20

"[a]ll documents that the government alleges constitute evidence of [his]

knowledge or lack of knowledge concerning" Assa's relationship with Bank Melli

and the government of Iran, or any of the allegations in the forfeiture complaint.[64]

         The government responds that "it has no interest in attempting to

prove the forfeiture allegations or otherwise prove acts attributable not to the

defendant but to the Alavi Foundation, Assa Corporation, Bank Melli, or the

Government of Iran."[65]  Of particular interest, the government represents that it

"has produced and will produce any documents that constitute evidence of the

defendant's knowledge of the investigation underlying the subpoena that he

disregarded in destroying documents and obstructing the investigation."[66]

         Even if Jahedi is correct that the government has yet to produce a

single document concerning the grand jury proceedings or Jahedi's knowledge of

them,[67] at this stage — and without reference to any set or piece of evidence that

the government will attempt to introduce at trial — I find no reason to exclude the

forfeiture proceedings.  Indeed, I agree with the government that Jahedi's

knowledge of the investigation underlying the subpoena is an appropriate line of

---

[64]     *Id.* ¶ 9f.  *Accord* Def. Reply at 8-9.

[65]     Gov. Mem. at 10.

[66]     *Id.*

[67]     *See* Def. Reply at 6.

21

inquiry at trial.  As previously discussed, in order to secure a conviction the
government must prove that Jahedi had the requisite intent and, at least under
section 1503, a nexus between the corrupt act and its effect on the grand jury
proceeding.[68]  To the extent that the grand jury's investigation involved entities
associated with the Iranian government, Jahedi's knowledge of that and of those
alleged relationships is relevant to motive and state of mind.  The forfeiture
allegations are the context of this case, and the government need not prosecute
Jahedi in a vacuum.  Of course, the Court retains the power to address any Rule 16
violation that is identified during trial.  For example, should the government seek
to offer an item into evidence that should have been but was not produced pursuant
to Jahedi's discovery request, appropriate action can be taken at that time.

### 2.    Scope and Subject-Matter of the Grand Jury Proceedings

Jahedi next argues for exclusion of the forfeiture allegations because
"none . . . are relevant or necessary to prove the government's narrow obstruction
charges against Mr. Jahedi."[69]  Relying principally on *United States v. Quattrone*,
Jahedi asserts that "the government has no basis to go beyond the mere existence
of a grand jury investigation by introducing the [forfeiture] allegations relating to

---

[68]    *See supra* notes 25, 26, & 29 and accompanying text.

[69]    Def. Mem. at 17.

the payment of funds to Iran as evidence."[70]

I have already explained why the forfeiture allegations are relevant.[71] As for *Quattrone*, Jahedi asks too much of it.  In *Quattrone*, the Second Circuit vacated a section 1503 conviction upon concluding that the district court failed to properly charge the jury on the mens rea requirement.[72]  The court explained that section 1503 requires proof that a defendant knew his corrupt actions were likely to affect the pending judicial proceeding, nothing more and nothing less.[73]  Jahedi highlights *Quattrone*'s rejection of the notion that the jury had to find the defendant possessed "knowledge of the scope and subject matter of the grand jury investigation, such that he knew what documents or categories of documents had been subpoenaed by the grand jury and that he corruptly endeavored to obstruct by causing the destruction of documents he knew to be sought in the investigation."[74]  While Jahedi correctly notes that the government *need not* prove that he knew the parameters and/or particulars of the subpoena or the underlying grand jury

---

[70]    *Id.* at 18-19.

[71]    In this connection, Jahedi's citations to cases striking irrelevant and prejudicial language from indictments are inapposite.  The forfeiture allegations are relevant here.

[72]    *See* 441 F.3d 153, 180 (2d Cir. 2006).

[73]    *See id.*

[74]    *Id.* at 179 n.25.

investigation, this does not mean that the government *may not* do so.

### 3.     Prejudice Due to the Subject Matter of the Forfeiture Allegations

Finally, Jahedi argues that the forfeiture allegations should be excluded due to the inflammatory and prejudicial nature of the accusations themselves — that they concern and implicate the government of Iran.[75]  The government concedes that the Iranian government's image is a "poor one."[76] Jahedi's claims of prejudice are, at best, premature.  The question of prejudice is best addressed in voir dire, evidentiary rulings, and the jury charge — not by excluding the forfeiture allegations, which I have already concluded are relevant to this case.

## IV.   CONCLUSION

For the reasons set forth above, Jahedi's motion to dismiss one of the counts of the indictment and to exclude the forfeiture allegations is denied.  The Clerk of the Court is directed to close this motion (document no. 21).  A conference is scheduled for November 11, 2009 at 2 p.m.

---

[75]     *See* Def. Mem. at 20-24.

[76]     Gov. Mem. at 11.

24

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 2, 2009

## - Appearances -

### For the Government:

Harry A. Chernoff
John P. Cronan
David S. Leibowitz
Assistant United States Attorneys
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2200

### For Defendant Jahedi:

Barry H. Berke, Esq.
Steven S. Sparling, Esq.
Arielle Warshall Katz, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100